

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 2, 2022

**VIA ECF & E-MAIL**
The Honorable Mary Kay Vyskocil
United States District Court
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re:     United States v. Rick Dane, Jr., S6 20 Cr. 160 (MKV)

Dear Judge Vyskocil:

Rick Dane, Jr. ("Dane" or the "defendant") joined in a conspiracy with Lisa Giannelli and, by extension, Seth Fishman and others at Equestology that he knew was wrong and illegal. The defendant not only purchased performance-enhancing drugs ("PEDs") and prescription drugs from Giannelli that he was using to dope his horses, the defendant also served as a trusted resource for Giannelli by providing background on potential new clients who could be considered "trustworthy." One of the means by which Dane's co-conspirators evaded detection was by vetting buyers to ensure they would be discreet and would not report Equestology to relevant racing and drug regulatory authorities, or otherwise act recklessly and invite scrutiny of Equestology's drugs. Dane facilitated these efforts by providing Giannelli with background information on such individuals. The defendant consistently purchased adulterated and misbranded PEDs from Giannelli and others, all in efforts to corruptly dope his racehorses and earn hundreds of thousands of dollars in purse winnings.

For the reasons explained herein, a sentence slightly below the Guidelines Sentence of 36 months' imprisonment is appropriate to address the nature of the offense and to provide adequate deterrence and continued protection to the public.

I.     **Procedural History**

On February 26, 2020, a federal grand jury sitting in the Southern District of New York returned an Indictment charging 19 individuals, including the defendant, with engaging in various conspiracies to manufacture, distribute, administer, and/or receive adulterated and misbranded PEDs intended for use on racehorses, and to secretly administer those PEDs to racehorses under scheme participants' control, with the intent to mislead and defraud various people and entities, including federal and state drug and horse racing regulators. *United States v. Navarro et al.*, 20 Cr. 160 (MKV) (S.D.N.Y.). The defendant was charged in one count of participating in a conspiracy to create, receive, and distribute adulterated and misbranded drugs in interstate

commerce with the intent to defraud and mislead, in violation of Title 18, United States Code, Section 371. The charges were predicated on the defendant's facilitation of a scheme in which several co-conspirators created, marketed, and sold adulterated and misbranded drugs under the auspices of Equestology. On November 5, 2020, the grand jury returned the superseding and operative S6 Indictment, charging Dane with that same count.

On February 11, 2022, Dane pleaded guilty, pursuant to a plea agreement, to the S12 Superseding Information, charging Dane with one count of the substantive crime of drug adulteration and misbranding, in violation of Title 21, United State Code, Sections 331 and 333(a)(2). Dane entered a change of plea after the Court denied substantive pre-trial motions, and after Seth Fishman, one of Dane's co-conspirators had been convicted at trial.

## A. Sentencing Factors

### a. Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### b. Discussion

As the Court is aware, the Government has carefully considered its view of the relative culpability of the defendants who have been sentenced thus far, and has endeavored to reach dispositions with Guidelines calculations that accurately and appropriately reflect the defendants' individual offense conduct and personal characteristics, their culpability relative to one another, as well as the quality of their acceptance of responsibility relative to the timing of their decisions to plead guilty. The defendants who have been sentenced thus far in this matter and their applicable Guidelines ranges are listed below.[1] This summary is provided for the Court's reference, but it of course does not capture the totality of the relevant sentencing considerations for each defendant.

- Jordan Fishman (Guidelines Range of 12 to 18 months' imprisonment): Jordan Fishman, a drug manufacturer, assisted Seth Fishman in creating and manufacturing adulterated and misbranded performance-enhancing drugs in his Massachusetts-based laboratory, for further distribution by Seth Fishman and Lisa Giannelli. Jordan Fishman personally produced the illegal drugs for later distribution, created new drugs entirely at Seth Fishman's direction, and was involved in the manufacture of a variety of drugs. Jordan Fishman was not involved in the labeling, marketing, or sale (to consumers) of the illicit drugs he created, nor did he solicit customers or otherwise engage with customers, and did not otherwise promote the drugs that he created and produced. Jordan Fishman's offense conduct spanned approximately three years. Jordan Fishman also was not a veterinarian, did not have any animals under his care and/or control, and was not involved in the marketing and sale of the drugs he was creating for Seth Fishman. On February 8, 2022, this Court sentenced Jordan Fishman to a term of fifteen months' imprisonment, and one year of supervised release.

- Michael Kegley Jr. (Guidelines Range of 30 to 37 months' imprisonment but, given the statutorily authorized maximum sentence, the Guidelines sentence correspondingly adjusted to 30 to 36 months' imprisonment): Kegley, the Director of Sales of Medivet, held no medical license, and did not have any duty of care to racehorses as part of his profession. Kegley did not engage in efforts to directly mislead state racing commissions. Further, Kegley's criminal activity was predominantly confined to the marketing and distribution of a discrete set of adulterated and misbranded drugs. Kegley's offense conduct spanned approximately four years. On January 6, 2022, this Court sentenced Kegley to a term of thirty months' imprisonment, and one year of supervised release.

---

[1] The Government has omitted from this discussion convicted defendants Michael Tannuzzo and Erica Garcia, given that they are awaiting sentencing, and given the number of remaining defendants who have been sentenced by this Court.

- Marcos Zulueta (Guidelines Range of 30 to 37 months' imprisonment but, given the statutorily authorized maximum sentence, the Guidelines Range correspondingly adjusted to 30 to 36 months' imprisonment): Zulueta, a racehorse trainer, assisted co-defendant Jorge Navarro in obtaining and administering performance-enhancing drugs for the purpose of doping horses, and exchanged tips with Navarro regarding new illicit drugs to administer to horses, and different methods of administration.  Zulueta not only procured illicit drugs, he personally administered them to the racehorses under his care and control, and stood to personally profit from the improved performance of the racehorses he doped. Zulueta was not involved in the creation or marketing of adulterated and misbranded drugs, and his offense conduct spanned approximately one year. On February 24, 2022, this Court sentenced Zulueta to a term of 33 months' imprisonment, and one year of supervised release.

- Christopher Oakes (Guidelines Range of 46 to 57 months' imprisonment but, given the statutorily authorized maximum sentence, the Guidelines sentence correspondingly adjusted to 36 months' imprisonment): Oakes, a racehorse trainer, procured adulterated and misbranded performance-enhancing drugs from Seth Fishman, re-distributed those drugs to Navarro, and produced his own drench that was purportedly untestable even when administered the day of a race, which Oakes administered to his own racehorses (those he owned and trained) and provided to Navarro. Oakes assisted Navarro in surreptitiously administering drugs to one of Navarro's racehorses, "XY Jet," the day that horse was scheduled to race, by sneaking past racetrack security officials and concealing from those same officials the true purpose of his entry into the racetrack and barn area where "XY Jet" was housed. Oakes was licensed—and was thus proficient in various racing rules prohibiting the use of PEDs—and personally administered drugs to the horses under his care and control. Oakes was convicted for offense conduct that spanned approximately one year. On March 3, 2022, this Court sentenced Oakes to a term of thirty-six months' imprisonment, and one year of supervised release.

- Kristian Rhein (Guidelines Range of 135 to 168 months' but, given the statutorily authorized maximum sentence, the Guidelines Sentence correspondingly adjusted to 36 months' imprisonment):  Rhein was a veterinarian and Medivet-affiliate who conspired with Kegley and others to market, distribute, sell, and administer SGF-1000, and further illicitly distributed unprescribed clenbuterol.  Rhein was a licensed veterinarian, thus was well-acquainted with the various legal regimes governing the sale and distribution of adulterated and misbranded drugs. Rhein generated false invoices for customers, using misleading billing codes for SGF-1000 and the illicit clenbuterol he provided to racehorse trainers. Rhein's offense conduct was limited to a handful of adulterated and misbranded PEDs, and Rhein was involved in the marketing and administration of those drugs, but not the creation and manufacture of those drugs. Rhein participated in the offense conduct for approximately four years. On January 5, 2022, this Court sentenced Rhein to a term of three years' imprisonment, and one year of supervised release.

- Jorge Navarro (Guidelines Range of 168 to 210 months' imprisonment but, given the statutorily authorized maximum sentence, the Guidelines sentence is correspondingly adjusted to 60 months' imprisonment): Navarro, a thoroughbred racehorse trainer, was a prolific doper of racehorses, utilizing multiple sources of supply for the PEDs he used, drawing from foreign and domestic sources, and soliciting drugs from both non-veterinarians and veterinarians alike. Navarro is notable for his aggressive pursuit of novel drugs to administer to the racehorses under his care and control. As a trainer, Navarro personally profited from the improved performance of the racehorses he had surreptitiously and corruptly doped. Navarro's offense conduct spanned approximately four years. On December 17, 2021, this Court sentenced Navarro to a term of 60 months' imprisonment, and three years' supervised release.

- Lisa Giannelli (Guidelines Range of 78 to 97 months' imprisonment but, given the statutorily authorized maximum sentence, the Guidelines sentence is correspondingly adjusted to 60 months' imprisonment): Giannelli, working under the auspices of Equestology, marketed, sold, and distributed hundreds of PEDs to hundreds of racehorse trainers, for a period of almost two decades. Giannelli suggested novel drugs for co-conspirator Seth Fishman to produce, and created marketing material to distribute to racehorse trainers, in order to boost her sales. Giannelli earned a six-figure annual income derived from the commissions for the drugs she sold. Giannelli affirmatively misled the Delaware Division of Professional Responsibility in 2011, during the course of the conspiracy, and continued her offense conduct even after learning of Seth Fishman's legal troubles in November 2019. At trial, Giannelli testified falsely in her own defense. Giannelli was convicted at trial, and is awaiting sentencing.

- Seth Fishman (Guidelines Range of 210 to 240 months' imprisonment, automatically adjusting the high end of the calculated Guidelines range to the statutory maximum sentence of twenty years' imprisonment): Fishman owned and operated Equestology, through which he created, manufactured, marketed, and distributed drugs. For approximately twenty years, Fishman generated millions of dollars in profit; created hundreds of novel adulterated and misbranded drugs; and enabled the doping practices of hundreds of trainers through his crimes. Further, Fishman was undeterred by his arrest or his subsequent indictment: he continued to commit crimes until a few weeks before his criminal trial commenced. Fishman was convicted at trial, after which this Court sentenced him to a term of eleven years' imprisonment.

Turning to Dane, the 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate general deterrence. With respect to relative culpability, Dane's offense conduct is comparable to Zulueta and Oakes; all three trainer-defendants administered adulterated and misbranded PEDs to horses under their control, and each defendant took further steps to assist the distribution or administration of drugs

by others. A sentence slightly below the Guidelines Sentence of 36 months' imprisonment is appropriate to serve the purposes of sentencing when balancing all the factors relevant to the defendant's guilt, including the relatively limited role he played in facilitating Equestology's operations as compared to Seth Fishman and Lisa Giannelli, both of whom had more extensive involvement in the promotion and sale of Equestology's drugs, and who partook in their offense conduct for a significantly longer period of time.

First, the nature and seriousness of Dane's offense conduct merits a significant term of imprisonment. Dane purchased multiple adulterated and misbranded Equestology drugs from Giannelli, including bleeder pills, EPM Double Kill, Oxygenator, and Pentosan. *See* Exhibits A-D. Notably, and consistent with Dane's trusted role in facilitating Equestology sales, Dane received a number of drugs free of charge, in addition to those he purchased from Giannelli. *Id.* The drugs Dane purchased and used ranged from injectable drugs to a potent analgesic known as the "Fishman Pain Shot" or "Fishman Frozen Pain," which was a particularly powerful drug used to numb a racehorse. Moreover, as a licensed trainer, Dane was undoubtedly aware that what he was doing was wrong and illegal; in doping his racehorses he abdicated his duty of care to the animals under his control.

Second, a Guidelines sentence is necessary to provide just punishment. Dane knew his conduct was wrong, illegal and risked harm to the horse. He nonetheless persisted in the offense conduct. As with the other defendants charged in this matter, the defendant's crime was not the result of a single lapse in judgment. And unlike many of the trainer-defendants charged in this matter, Dane took active steps to facilitate Equestology's business and help boost Giannelli's sales by providing her with background information on clients. The defendant's assistance was aimed at the shared goal of ensuring that he and his co-conspirators could continue to evade regulators by dealing with trusted clientele. Dane was in Giannelli's inner circle; his assistance to the conspiracy was rewarded with free drugs which Dane could use to continue doping racehorses he trained.

Finally, a Guidelines sentence is necessary to afford adequate general deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Individuals like Dane engage in the hazardous and illegal administration of unnecessary performance-enhancing drugs to performance animals, under the assumption that no serious consequences will follow. Imposing a substantial sentence here, one that is nonetheless slightly below the applicable Guidelines Sentence, will send a strong signal to others thinking of engaging in such criminality that serious consequences will follow.

## **Conclusion**

The Government respectfully submits that a sentence slightly below the Guidelines Sentence of 36 months' imprisonment is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing set forth in Title 18, United States Code, Section 3553(a).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by:  __/s/ Sarah Mortazavi_____
     Sarah Mortazavi/Anden Chow
     Assistant United States Attorney
     212-637-2520

cc: Calvin Scholar, Esq. (via ECF)